**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, | |
| Plaintiff, | No. 3:25-cv-00117-SHL-WPK |
| vs. | |
| CUPPLES INTERNATIONAL, INC., | **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO CUPPLES INTERNATIONAL, INC.'S COUNTERCLAIM** |
| Defendant, | |
| THE BOARD OF REGENTS, STATE OF IOWA, on behalf of the UNIVERSITY OF IOWA, | |
| Nominal Defendant. | |

**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY'S ANSWER AND AFFIRMATIVE DEFENSES TO CUPPLES INTERNATIONAL, INC.'S COUNTERCLAIM**

Plaintiff, American Guarantee and Liability Insurance Company ("Zurich") by and through its attorneys, Clyde & Co US LLP, and for its Answer and Affirmative Defenses to Defendant, Cupples International, Inc.'s ("Cupples") Counterclaim, states as follows:

1. For its Counterclaim against American Guarantee and Liability Insurance Company ("Zurich"), Cupples International, Inc. ("Cupples") states and alleges as follows:

**ANSWER:** Paragraph 1 consists of introductory statements regarding Cupples' Counterclaim against Zurich and does not contain factual allegations requiring a response. To the extent any response is deemed necessary, Zurich denies that paragraph 1 states any allegation of fact against Zurich or provides any basis for liability or relief.

**THE PARTIES**

2. Cupples has its principal place of business in Missouri.

**ANSWER:** Zurich admits the allegations in paragraph 2.

3.    Upon information and belief, Zurich is an insurance company organized under the laws of the State of New York with its principal place of business in Illinois.

**ANSWER:**   Zurich admits the allegations in paragraph 3.

## JURISDICTION AND VENUE

4.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because there is diversity of citizenship between the parties and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

**ANSWER:**   The allegations in paragraph 4 consist of legal conclusions for which no response is required. To the extent a response is required, Zurich admits the allegations in paragraph 4.

5.    Venue over this action is proper under 28 U.S.C. § 1391 because it is in the district in which a substantial part of the events or omissions giving rise to the claim occurred.

**ANSWER:**   The allegations in paragraph 5 consist of legal conclusions for which no response is required. To the extent a response is required, Zurich admits the allegations in paragraph 5.

## FACTUAL BACKGROUND

### A.    Zurich's Insurance Coverage

6.    Zurich issued a series of Excess Liability Policies to CH Holdings USA, Inc. for consecutive annual policy periods from April 9, 2017 to April 9, 2021 (collectively, "Zurich Excess Policies"). The Zurich Excess Policies are attached to Zurich's Complaint as Exhibit B and incorporated herein.

**ANSWER:**   Zurich admits that it issued Following Form Excess Liability Policy Nos. AEC 9243117-05, AEC 9243117-06, AEC 9243117-07 and AEC 9243117-08 to CH Holdings USA, Inc. in effect for consecutive annual periods from April 9, 2017 to April 9, 2021 ("Zurich Excess Policies"). The Zurich Excess Policies are written documents that speak for themselves, are the best evidence of their contents, and must be read and construed as a whole. Zurich denies

any characterizations of the Zurich Excess Policies referenced in paragraph 6 that are inconsistent with its contents. Zurich denies all remaining allegations contained in paragraph 6.

7.    The Zurich Excess Policies generally follow form to the excess policies issued to CH Holdings USA, Inc. by Starr Indemnity & Liability Company and Endurance American Insurance Company, which in turn generally follow form to the primary policies issued to CH Holdings USA, Inc. by Travelers Property Casualty Company of America (collectively, the "Travelers Policies"). The Travelers Policies are attached to Zurich's Complaint as Exhibit C and incorporated herein.

**ANSWER:**   The Zurich Excess Policies, policies issued by Starr Indemnity & Liability Company and Endurance American Insurance Company and Travelers Policies referenced in paragraph 7 are written documents that speak for themselves, are the best evidence of their contents, and must be read and construed as a whole. Zurich denies any legal conclusions and/or characterizations of such documents that are inconsistent with their contents and denies all remaining allegations.  Zurich denies all remaining allegations contained in paragraph 7.

**B.    The Arbitration and Final Award**

8.    The University of Iowa Stead Family Children's Hospital is a fourteen-story building located in Iowa City, Iowa and operated by the Board of Regents, State of Iowa on behalf of the University of Iowa (the "Board"). In 2017, construction of the hospital was completed in 2017 for approximately $400 million (the "Project").

**ANSWER:**   Zurich admits that the Arbitration Panel found that the University of Iowa Stead Family Children's Hospital is a fourteen-story building that was completed in 2017 for approximately $400 million.  Zurich lacks sufficient knowledge or information with which to admit or deny the remaining allegations contained in paragraph 8 and demands strict proof thereof. Zurich denies all remaining allegations contained in paragraph 8.

9.    The Project included a "curtainwall system" in which wall panels, glass and other materials are used for exterior cladding of the building. The curtainwall system provides a thermal barrier, resists air and water infiltration, and was designed by the curtainwall supplier to accommodate deflections, thermal expansion and contraction, building sway, and relative movements caused by loads acting on the structure. The Project's curtainwall system included IGUs.

**ANSWER:** Zurich admits that the Project as defined in paragraphs 8 and 9 includes a curtainwall that includes IGUs. Zurich lacks sufficient knowledge or information with which to admit or deny the remaining allegations contained in paragraph 9 and demands strict proof thereof. Zurich denies all remaining allegations contained in paragraph 9.

10. The Board contracted with Cupples and Knutson for curtainwall system work. On April 11, 2013, the Board and Cupples entered into a contract for Bid Package #7 for the exterior construction of the hospital portion of the Project.

**ANSWER:** The contract, as referenced in paragraph 10, is a document that speaks for itself, is the best evidence of its contents, and must be read and construed as a whole. Zurich denies any characterizations of the contract which call for legal conclusions and/or that are inconsistent with its contents. Zurich denies all remaining allegations contained in paragraph 10.

11. On March 5, 2014, the Board and Knutson entered into a contract for Bid Package #20 for the connector bridge. For the Bid Package #20, Knutson subcontracted with Cupples for the bridge curtainwall.

**ANSWER:** Zurich admits that Knutson subcontracted the bridge curtainwall and windows scope to Cupples as part of Bid Package #20. Zurich also states that the contract and subcontract, as referenced in paragraph 11, are documents that speak for themselves, are the best evidence of their contents, and must be read and construed as a whole. Zurich denies any legal conclusions and/or characterizations of the contract/subcontract that are inconsistent with their contents.

12. Cupples subcontracted with Cristacurva under both Bid Package #7 and Bid Package #20

**ANSWER:** The subcontract(s), as referenced in paragraph 12, is/are document(s) that speak(s) for itself/themselves, is/are the best evidence of its/their contents, and must be read and construed as a whole. Zurich denies any legal conclusions and/or characterizations of the contract(s) that are inconsistent with its contents.

13.     On August 4, 2021, the University of Iowa Hospital and Clinics ("UICH") notified Cupples that it discovered water dripping through the ceiling of a waiting room. According to UICH, it appeared that water leaked through the exterior cladding and infiltrated the ceiling through cracks in the cement decking. UICH noted that it intended to hold Cupples responsible for damages.

**ANSWER:** Zurich admits that the University of Iowa Hospitals & Clinics issued correspondence to CH Holdings dated August 4, 2021 advising of water dripping through the ceiling of the waiting room located at 42100-WT. The August 4, 2021 correspondence is a document that speaks for itself, is the best evidence of its contents, and must be read and construed as a whole. Zurich denies any legal conclusion and/or characterization of the correspondence that is inconsistent with its contents. Zurich denies all remaining allegations contained in paragraph 13.

14.     Experts also concluded that the water accumulation was extensive, with apparent water damage into the walls. Significant amounts of water had infiltrated the curtainwall system provided by Cupples and had been sealed and trapped inside the exterior façade of the building. According to experts, water trapped inside and behind a curtainwall system has the potential to damage other components of the building system, including corrosion of metals and water damage to organic materials. Given the amount of water that the experts observed pouring out from inside and behind the curtainwall system, the experts expected there to be water damage to other building components due to the water trapped inside.

**ANSWER:** Zurich lacks sufficient knowledge or information with which to admit or deny the allegations contained in paragraph 14 and demands strict proof thereof.

15.     UICH also notified Cupples that broken glass was found to have fallen from the fifth floor of the building into the outside courtyard, and as a result, UICH spent substantial amounts for stabilization efforts to avoid risks of serious injury.

**ANSWER:** Zurich lacks sufficient knowledge or information with which to admit or deny the allegations contained in paragraph 15 and demands strict proof thereof

16.     In September 2022, the Board commenced an arbitration proceeding (the "Arbitration") against Cupples and Knutson Construction Services Midwest, Inc. ("Knutson"). Cristacurva, LLC ("Cristacurva") was added as a party by way of direct claims by the UICH, Knutson, and Cupples. A copy of UICH's Detailed Statement of Claim is attached to the Starr Complaint as Exhibit A and incorporated herein.

**ANSWER:**    Zurich states that the Detailed Statement of Claim is a document that speaks for itself and is dated September 19, 2022.  The Detailed Statement of Claim is the best evidence of its contents and must be read and construed as a whole.  Zurich denies any characterization of this document that is a legal conclusion and/or inconsistent with its contents.  Zurich denies all remaining allegations contained in paragraph 16.

17.    In the Arbitration, the Board sought to recover damages due to, among other things, failures of the Insulated Glass Units ("IGUs") at the Project.

**ANSWER:**    The Detailed Statement of Claim, which sets forth the relief sought by the Claimant, is a document that speaks for itself, is the best evidence of its contents, and must be read and construed as a whole.  Zurich denies any characterization of the relief requested that is a legal conclusion and/or inconsistent with the document's contents.   Zurich denies all remaining allegations contained in paragraph 17.

18.    On July 3, 2025, following extensive hearings and testimony, the arbitrators entered a Final Award in favor of the Board and against Cupples in the amount of $49,462,962.

**ANSWER:**    Zurich admits that the arbitrators issued an award of $49,462,962 in a written "Final Award" that is dated July 3, 2025.  The Final Award is a document that speaks for itself, is the best evidence of its contents, and must be read and construed as a whole.  Zurich denies any legal conclusion and/or characterization of the Final Award that is inconsistent with its contents.  Zurich denies all remaining allegations contained in paragraph 18.

19.    The arbitrators, having considered and weighed the expert testimony and reports, found that the cause of the delamination and resulting failure of the IGUs was due to, among other things, misfabrication of the glass in the IGUs by Cristacurva and that due to a loss of use (e.g., dangers presented to persons inside and outside the building from falling glass) that all window systems had to be removed and replaced.

**ANSWER:**    The Final Award is a document that speaks for itself, is the best evidence of its contents, and must be read and construed as a whole.  Zurich denies any characterization of the

Final Award that is a legal conclusion and/or inconsistent with its contents.  Zurich denies all remaining allegations contained in paragraph 19.

**C.      Zurich's Refusal to Provide Coverage for the Final Award**

20.      Cupples tendered the Arbitration to Zurich under the Zurich Excess Policies.

 **ANSWER:**   Zurich admits the allegations contained in paragraph 20.

21.      Zurich issued a reservation of rights with respect to the Arbitration.

**ANSWER:**    Zurich's written communications are documents that speak for themselves, are the best evidence of their contents, and must be read and construed as a whole. Zurich denies any characterizations of the written communications referenced in paragraph 21 that are inconsistent with their contents and/or state legal conclusions.

22.      Following the Final Award, Zurich disclaimed coverage.

 **ANSWER:**   Zurich's written communications are documents that speak for themselves, are the best evidence of their contents, and must be read and construed as a whole. Zurich denies any characterizations of the written communications referenced in paragraph 22 that are inconsistent with their contents and/or state legal conclusions.

**<u>COUNT ONE</u>**<br>**(Breach of Contract)**

23.      Cupples repeats and reiterates each and every allegation contained in the foregoing Paragraphs above as though fully set forth herein.

 **ANSWER:**  Zurich incorporates by reference and restates its answers set forth in paragraphs 1 through 22, as its answer for paragraph 23 as if fully set forth herein.

24.      The Zurich Excess Policies are valid and enforceable contracts.

**ANSWER:**    The allegations in paragraph 24 are legal conclusions to which no response is required. To the extent a response is required, Zurich admits its Excess Policies are valid and enforceable contracts.

7

25.    Zurich has a duty to indemnify Cupples for the Final Award.

**ANSWER:**    Zurich denies the allegations in paragraph 25.

26.    Cupples performed all obligations under the Zurich Excess Policies that were not otherwise excused by Zurich's conduct.

**ANSWER:**    Zurich denies the allegations in paragraph 26.

27.    Zurich breached its obligations under the Zurich e [sic] Excess Policies by repudiating and denying Zurich's duty to indemnify Cupples for the Final Award.

**ANSWER:**    Zurich denies the allegations in paragraph 27.

28.    As a direct and proximate result of Zurich's breach of its contractually-owed duty to indemnify Cupples in connection with the Final Award, Cupples has been damaged in excess of $75,000 exclusive of interest and costs.

**ANSWER:**    The allegations in paragraph 28 are legal conclusions to which no response is required. To the extent a response is required, Zurich denies the allegations in paragraph 28.

## AFFIRMATIVE DEFENSES

1.    The Counterclaim fails to state a claim upon which relief can be granted as against Zurich.

2.    Cupples' claims in the Counterclaim are barred because the Final Award does not implicate coverage under the Zurich Excess Policies based on their terms, conditions, limitations, definitions and exclusions.

3.    Cupples' claims in the Counterclaim are barred because Zurich does not have a duty to indemnify Cupples for the Final Award.

4.    Cupples' claims in the Counterclaim are barred to the extent the Total Limits Of All Underlying Insurance have not been exhausted.

5.    Cupples' claims in the Counterclaim are barred because no part of the Final Award is for damages Cupples was legally obligated to pay because of "property damage" caused by an "occurrence."

8

6.      Cupples' claims in the Counterclaim are barred because the amounts awarded in the Final Award are for damages expected or intended from the standpoint of the insured.

7.      Cupples' claims in the Counterclaim are barred because the amounts awarded in the Final Award are for damages assumed in a contract or agreement and, therefore, are precluded from coverage by the contractual liability exclusion.

8.      Cupples' claims in the Counterclaim are barred to the extent the amounts awarded in the Final Award are for "property damage" to that particular part of real property on which Cupples or its subcontractors working directly or indirectly on its behalf are performing operations, if the "property damage" arises out of those operations; or that particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

9.      Cupples' claims for damages in the Counterclaim are barred because the amounts awarded in the Final Award are for "property damage" to "your product", as those terms are defined.

10.     Cupples' claims for damages in the Counterclaim are barred because the amounts awarded in the Final Award are for "property damage" to "your work" arising out of it or any part of it, as those terms are defined.

11.     Cupples' claims for damages in the Counterclaim are barred because the amounts awarded in the Final Award are for "property damage" to "impaired property" or property that has not been physically injured, arising out of: a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or failure by you or anyone acting on your behalf to perform a contract or agreement unless the loss of use arises out of sudden and accidental physical injury to "your product" or "your work".

12.     Cupples' claims for damages in the Counterclaim are barred or limited to the extent the amounts awarded in the Final Award are for "property damage" arising out of the rendering or failure to render professional services.

13.     Zurich reserves the right to amend its Answer and Affirmative Defenses to the Counterclaim, including but not limited to, asserting additional affirmative defenses as evidence develops and becomes available.

WHEREFORE, Zurich respectfully requests that this Court deny the Counterclaim and find in favor of Zurich and award any other relief it deems equitable and just.

Dated: March 9, 2026                         CLYDE & CO US LLP


By:     */s/ Smita Mokshagundam*
_____

Smita Mokshagundam* (#6275539)
30 S. Wacker Dr., Suite 2600
Chicago, IL 60606
T:  (312) 635-7000
F:  (312) 635-6950
smita.mokshagundam@clydeco.us

*Admitted pro hac vice*

*/s/ Jeffrey L. Goodman*
Jeffrey L. Goodman
Goodman/Keller P.C.
1501 42nd Street, Suite 300
West Des Moines, Iowa 50266
T:  515.267.8600
F:  515.224.2075
E-Mail:  jeff@golawpc.com


ATTORNEYS FOR AMERICAN GUARANTEE
AND LIABILITY INSURANCE COMPANY

**PROOF OF SERVICE**

The undersigned certifies that the foregoing instrument was served upon the parties to this action by serving a copy upon each of the attorneys of record on March 9, 2026 via CM/ECF.

Signature:   */s/ Kelly J. Jacobson*